50 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcus BROWN, Defendant-Appellant.
 No. 94-5660.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1995.
 
 Before: JONES, CONTIE, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Marcus Brown appeals his drug trafficking conviction. We affirm.
 
 I.
 
 2
 On July 2, 1993, Drug Enforcement Administration Special Agent Abe Collins ("Agent Collins") and confidential informant Toby Pegues participated in an undercover drug operation. Pegues was wired with an electronic monitoring device and Agent Collins was supplied with $2000 in DEA funds to purchase two ounces of crack cocaine.
 
 
 3
 Agent Collins and Pegues drove to the Clayborne Homes Apartment Complex in Memphis, Tennessee, to find Malcolm Green, a known drug trafficker. As Agent Collins and the informant arrived at the apartment complex, Green walked over to the informant's vehicle. Pegues told Green that he and "Troy" wanted to obtain two ounces of cocaine. Green invited the men into his apartment and told them that he could obtain the cocaine from "Song." Green then paged Song. Song responded to the page within minutes. While on the telephone with Song, Green asked Agent Collins and Pegues if they wanted "powder" or "rock" cocaine; Agent Collins demanded rock cocaine. Green then hung up the telephone and told the men that Song had the cocaine.
 
 
 4
 Agent Collins, Pegues and Green drove to a garage to meet Song. Green instructed Agent Collins and Pegues to follow him to Song's vehicle. Green sat in the front seat with Song; Agent Collins and Pegues sat in the back. Song, later identified as defendant-appellant Marcus Brown, handed two packages of crack cocaine to Green. Green handed one of the packages to Agent Collins and the other package to Pegues. Agent Collins handed Green the cash. Brown watched as Green counted the money out loud, then reached over and took possession of the cash.
 
 
 5
 After the exchange, Agent Collins asked Brown if he could contact him directly in the future. Brown told Agent Collins to contact Green instead. Agent Collins, Pegues and Green then exited Brown's vehicle.
 
 
 6
 On August 23, 1993, Brown and Green were charged in a one-count indictment with possessing, with intent to distribute, approximately 51 grams of cocaine base. Brown pled not guilty.
 
 
 7
 Brown's jury trial began on February 14, 1994. On February 15, 1994, the jury found Brown guilty. On April 29, 1994, the district court sentenced Brown to 168 months imprisonment, to be followed by a five year term of supervised release. Brown timely appealed.
 
 II.
 
 8
 Brown asserts that Green's incriminating statements should have been excluded because he and Green were not coconspirators. Specifically, Brown insists that "Green's role as a middleman or facilitator of the drug transaction does not make him a member of a conspiracy." Appellant's Brief at 11 (footnote omitted).
 
 
 9
 "In order to admit the statement of a co-conspirator under Fed.R.Evid. 801(d)(2)(E), it must first be determined that the conspiracy existed, that the defendant was a member of the conspiracy, and that the co-conspirator's statements were made 'in furtherance of the conspiracy.' These are factual determinations governed by the clearly erroneous standard of review." United States v. Gessa, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc) (citations omitted).
 
 
 10
 Though statements made by coconspirators are often admitted at trial under the "coconspirator exception" to the hearsay rule, such statements are actually non-hearsay pursuant to Federal Rule of Evidence 801(d)(2)(E) which provides: "A statement is not hearsay if [the] statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."
 
 
 11
 In order to satisfy Rule 801(d)(2)(E), the prosecution must establish that: "(1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the statement was made in furtherance of the conspiracy." United States v. Clark, 18 F.3d 1337, 1341 (6th Cir.) (citation omitted), cert. denied, 115 S.Ct. 152 (1994). "Each element must be proved by a preponderance of the evidence, and we review the district court's determinations for clear error." United States v. Blandford, 33 F.3d 685, 700 (6th Cir.1994) (citation omitted), petition for cert. filed, 63 U.S.L.W. 3583 (U.S. Jan. 31, 1995) (No. 94-1295). " 'However, a district court's conclusions of law, such as whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence, are reviewed de novo.' " United States v. Blakeney, 942 F.2d 1001, 1020 (6th Cir.) (citation omitted), cert. denied, 502 U.S. 1008 (1991) and cert. denied, 502 U.S. 1035 (1992). See also United States v. Gessa, 971 F.2d at 1261 ("Based on these factual determinations, the district court concluded that Rule 801(d)(2)(E) permitted the 'otherwise hearsay' co-conspirators' statements to be received as 'not hearsay.' This is a question of law, which we review de novo.").
 
 
 12
 To establish a drug conspiracy, the government must prove " 'that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it.' " United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991) (citation omitted). Though the essence of conspiracy is agreement, proof of a formal agreement is not necessary. Indeed, "a tacit or material understanding among the parties" will suffice. United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991). " 'A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.' " United States v. Blakeney, 942 F.2d at 1010 (citation omitted). "The government need not show that a defendant participated in all aspects of the conspiracy; it need only prove that the defendant was a party to the general conspiratorial agreement." United States v. Ledezma, 26 F.3d 636, 640 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994). Moreover, "the connection between the defendant and the conspiracy need only be slight." Id. (citation omitted). Moreover, the fact that Brown was not charged with conspiracy is irrelevant because "a conspiracy need not be charged in order to use coconspirator hearsay." United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir.1989) (citation omitted).
 
 
 13
 The district court properly concluded that Green and Brown were coconspirators. After telling Agent Collins and the informant that he could obtain two ounces of crack cocaine from "Song," Green paged Brown and Brown immediately responded. Green then drove with Agent Collins and the informant to meet Brown. After introductions, Brown handed two packages of crack cocaine to Green. Green then handed one package to Pegues and one package to Agent Collins. Agent Collins then handed Green the cash which he counted, out loud, as Brown watched. Brown then took the cash from Green, and told Agent Collins and the informant to contact Green in the future to arrange further transactions.
 
 
 14
 Though Brown maintains that he and Green were not coconspirators, it is evident that Brown and Green worked as a team to negotiate and distribute the crack cocaine to Agent Collins and the informant. Brown was the source of the cocaine; Green handled the negotiations. Together, they coordinated and finalized the transaction. Accordingly, the district court properly determined that Green's statements were admissible pursuant to Fed.R.Evid. 801(d)(2)(E). We AFFIRM.